UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

Case Number: 16-21981-CIV-MORENO

CAROL KLEIN,

    Plaintiff,

vs.

SEVEN SEAS CRUISES S. DE R.L. d/b/a
REGENT SEVEN SEAS CRUISES,

    Defendant.
_____/

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

This is a trip-and-fall case brought by Carol Klein against Seven Seas Cruises S. DE R.L. d/b/a Regent Seven Seas Cruises. Klein is a former passenger of the Regent *Seven Seas Navigator* cruise ship. She broke her ankle when she tripped and fell on a step while exiting the ship's theater. Klein claims that her injuries directly result from a tripping hazard created by Regent due to inadequate lighting on the theater steps. This cause comes before the Court upon Regent's motion for summary judgment. The Court has reviewed the motion, Klein's response, and Regent's reply. There are three issues: (1) whether a dangerous condition existed; (2) whether Regent had actual or constructive notice of a dangerous condition; and (3) whether Klein is required to prove that Regent was on notice of a dangerous condition.

### I.     BACKGROUND

On April 2, 2015, Klein was a guest aboard Regent's *Seven Seas Navigator* cruise ship. She decided to join her husband in the ship's theater while she waited for her 3:00 spa appointment. She entered the theater while all the lights were on, and walked down a ramp on the left side and through a row of seats to reach her husband. Thirty minutes later, while the

theater was "pitch black," Klein decided to leave for her spa appointment. She exited using the center aisle next to her seat. The theater steps contain strip lighting, as well as side spot lights on either side of each step, which all remain on during a movie. Klein tripped on the top step near her seat, fell, and broke her ankle. Five minutes later, a Regent security officer, Jose Shiju, investigated the incident. During his hour-long investigation, he took 11 photographs of the stairs, and recorded his findings. Shiju checked the strip lighting and the spot lights during his investigation and found them to be working properly.

Following an accident, Regent's policy is to take statements from all witnesses. Once per day, Regent's crewmembers from its electrical department walk through the theater to ensure all of the lights are in working order. If all lights are not illuminated, a ticket is opened in the "issues tracker" computer system and the problem is corrected within one day. The cleaning crew also walks through every morning and every night, and enters tickets into the system if there is anything out of order. Of the more than 100 reported lighting issues in the tracker from five years before Klein's incident until 10 months after, none identified any issues with the strip lighting. Further, there has only been one other reported injury in the theater in the past five years, and it did not involve steps or lights. In fact, Regent's former senior director of guest relations and risk management, Gair O'Neill, testified that the ship has never had an issue in the theater due to lighting in 17 years. The strip lights were installed in 2014 as an "enhancement" while the theater was getting new carpet, and not for any safety purposes. From 2000 to 2014, the theater contained no strip lighting.

More than 18 months after the incident, and after Regent had been sued, a Regent project engineer, Bryan Emond, conducted another investigation, focusing on the steps' compliance with operative safety standards and guidelines. Emond's report found that Regent's lighting was in

compliance with all applicable safety standards. Notably, in preparing his report, Emond did not use the 11 photographs taken by Shiju in the original investigation. And Regent cannot explain why the original photos are unavailable. Instead, Emond relied on other photographs taken 18 months after the incident, which clearly show some of the theater's strip lighting without properly working bulbs. But, even in Emond's pictures, all lights on the top step at issue are working.

During discovery, O'Neill was deposed as Regent's corporate representative. His testimony regarding the strip lighting was inconsistent. On direct examination, O'Neill admitted that the strip lighting was very important for safety purposes, and that without the lights the steps would constitute a tripping hazard. But, on cross examination and redirect, he took a different position—that he did not believe lack of strip lighting was a safety issue, as proven by the lack of prior incidents, even before the strip lighting was installed. He explained that his first answer was inconsistent because he was distracted and discombobulated at the time.

## II. LEGAL STANDARD

Summary judgment is proper when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). The moving party bears the initial burden of demonstrating the absence of any material issue. *Id.* Summary judgment should be granted when after viewing all the evidence in the light most favorable to the non-movant, the opposing party fails to prove an essential element of its claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 321 (1986). The adverse party must present specific facts showing there is a genuine issue for trial. *Id.* at 322. There is no issue for trial unless there is enough evidence to support a jury verdict for the nonmoving party, who must present more than a scintilla of evidence. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

## III. ANALYSIS

Regent argues that Klein has not proven the steps were a dangerous condition, or alternatively, that Klein has not proven that Regent had actual or constructive notice of the alleged dangerous condition. Klein argues that notice is not required because Regent created the foreseeably dangerous condition, or alternatively, because Regent was negligent in its maintenance of the theater.

The liability of a cruise ship in a trip-and-fall case is governed by maritime law. *Keefe v. Bahama Cruise Line, Inc.*, 867 F.2d 1318, 1320 (11th Cir. 1989). To hold Regent liable for negligence, Klein must demonstrate that: (1) Regent had a duty to protect her; (2) Regent breached that duty; (3) the breach actually and proximately caused her injury; and (4) she suffered actual harm. *See Sorrels v. NCL (Bahamas) Ltd.*, 796 F.3d 1275, 1280 (11th Cir. 2015) (quoting *Franza v. Royal Caribbean Cruises, Ltd.*, 772 F.3d 1225, 1253 (11th Cir. 2014)). The duty owed to cruise ships passengers is one of reasonable care under the circumstances. *Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625, 632 (1959).

Here, the second element is at issue. To prove Regent breached its duty, Klein must show that: (1) a dangerous condition existed; (2) Regent had actual notice of the dangerous condition; and (3) if not actual notice, Regent should have known that the dangerous condition existed and enough time had passed that corrective action should have been taken. *See Keefe*, 867 F.2d at 1322; *Adams v. Carnival Corp.*, No. 08-22465, 2009 WL 4907547, at *3 (S.D. Fla. Sept. 29, 2009) (Seitz, J.).

### A. Klein Has Failed to Prove a Dangerous Condition Existed

Klein alleges that her injury resulted from inadequate lighting on the edge of the top step in the middle stairway of the theater. She asserts that strip lights that are not properly functioning constitute a dangerous condition. Regent argues that there is no record evidence that

-4-

any of the theater's strip lights were not functioning when Klein tripped and that, in any event, illumination from the movie screen provides sufficient light. Further, Regent's investigating officer, Shiju, testified that the lights were operating immediately after the incident.[1] Regent also submitted an expert report showing that the theater's lighting complies with all safety standards.

A dangerous condition cannot be "apparent and obvious to the passenger." *Smolnikar v. Royal Caribbean Cruises Ltd.*, 787 F. Supp. 2d 1308, 1322-23 (11th Cir. 2011). However, one must not presume that because an accident occurred, a dangerous condition existed. *Isbell v. Carnival Corp.*, 462 F. Supp. 2d 1232, 1237 (S.D. Fla. 2006) (Moreno, J.). Rather, it is the plaintiff's responsibility to come forth with enough evidence proving there was a dangerous condition. *See id.*; *see also Williams v. Carnival Corp.*, No. 13-24686, 2014 WL 11958624, at *2 (S.D. Fla. Oct. 7, 2014) (Ungaro, J.) (granting summary judgment where plaintiff offered no evidence of a quarter-inch step or evidence that the step was hazardous).

Here, there is insufficient evidence to prove a dangerous condition existed. The evidence indicating that the lights were not working includes: (1) Klein's own testimony that the theater was "pitch black"; and (2) pictures in Regent's expert report taken 18 months after the incident. And even these photos show all strip lighting on the top step as operating. Although there were other witnesses to the incident, none have been interviewed and it is unclear if their identities could be attained. Even construing all evidence in Klein's favor, no reasonable juror could find that the lights were not working at the time of the incident. Other than her own testimony that the theater was "pitch black," there is no other evidence the lights were not working. To the

---

[1] Klein argues that Shiju's affidavit should be stricken from the record because Regent did not comply with this Court's November 4, 2016 order, as Regent did not allow Shiju to be deposed. However, following briefing of this motion, the Court entered an order indicating that it would not rule on the motion until after Regent produced Shiju for deposition. Subsequently, Regent made Shiju available for deposition. As Klein never filed any supplement to the summary judgment briefs, the Court assumes that Shiju's deposition did not produce any additional evidence to support Klein's arguments. Shiju's affidavit remains part of the record.

contrary, Regent's investigating officer filed a report that indicated all of the lights were working five minutes after the incident. Although Shiju took 11 photos during his initial investigation that are now missing and are not part of the record, and other potential witnesses were not interviewed, the Court cannot speculate as to what this other information might reveal. Further, the record indicates that a dangerous condition may not exist even if the theater did not have strip lights at all. Indeed, the theater did not have strip lights from 2000 to 2014. Before 2014, the spot lights proved sufficient, as there is no proof of any incident involving theater lighting during that time. The strip lights were installed in 2014 only to enhance an already safe environment.

Based on the record, no reasonable juror could find that a dangerous condition existed when Klein fell. Klein's failure to prove an essential element renders all other facts immaterial and requires the Court to grant summary judgment against her. *See Isbell*, 462 F. Supp. 2d at 1238. Accordingly, the Court **GRANTS** Regent's motion for summary judgment.

B.  **Regent Had Neither Actual Nor Constructive Notice of the Alleged Dangerous Condition**

Even if Klein were able to prove that a dangerous condition existed, the Court would still grant summary judgment because Klein also fails to prove that Regent had actual or constructive notice of the dangerous condition, or that notice was not required.

First, Klein has failed to adduce evidence suggesting that Regent knew that any theater strip lights were either dim or unlit. *Cf. Sorrels*, 796 F.3d at 1288 (finding a cruise ship had notice deck was slippery when it would sometimes display warning signs after it had rained); *Frasca v. NCL (Bahamas), Ltd.*, 654 Fed. App'x 949, 954 (11th Cir. 2016) (holding a cruise ship had notice when it played a video warning passengers of a deck's slipperiness). She does not point to any prior passenger complaints about the stairs or any reported issues with the strip lighting. Further, the record indicates that Regent's employees walk through every day to look

for any issues in the theater, including lighting. When an issue is identified, it is entered into Regent's issue tracker program and is generally resolved within one day. There is no report of any issues with lighting in the issue tracker system on the day of Klein's accident. *See also Cohen v. Carnival Corp.*, 945 F. Supp. 2d 1351, 1355 (S.D. Fla. 2013) (finding no evidence of notice where plaintiff cannot offer "any accident reports, passenger comment reviews or forms, or reports from safety inspection") (Lenard, J.).

Second, Klein cannot point to any other similar incidents, whether in the 14 years before the strip lighting was installed or in the three years since. *See Taiariol v. MSC Crociere, S.A.*, No. 15-61131, 2016 WL 1428942, at *5 (S.D. Fla. Apr. 12, 2016) (Moore, C.J.) (granting summary judgment where the record was devoid of any reference to other similar accidents that would have alerted the cruise ship to a dangerous condition). The Eleventh Circuit requires evidence of prior accidents to be "substantially similar to the occurrence in question." *Id.* (quoting *Jones v. Otis Elevator Co.*, 861 F.2d 655, 661-62 (11th Cir. 1988)); *see also Sorrels*, 796 F.3d at 1287-88 (holding 22 other slip-and-falls were not similar in nature where the location differed and some involved different footwear). Here, there is only one prior incident in the theater, and it is clearly distinguishable as it had nothing to do with the steps or the lights. There is no proof of any report or complaint of any passengers tripping, falling, or otherwise having any related issue with the stairs or lighting in the theater.

Simply put, there is insufficient record evidence to suggest that Regent knew or should have known that an allegedly dangerous condition existed. Although O'Neill testified that unlit strip lighting would be a hazard, such a speculative and abstract statement does not prove that Regent knew or should have known that any strip lights were not illuminated on the day of

Klein's incident.[2] Therefore, even assuming Klein could prove a dangerous condition existed, the Court still would grant Regent's motion for summary judgment because there is no evidence demonstrating Regent was on notice of a dangerous condition.

C.  **Klein is Not Exempt from Proving That Regent Was on Notice of a Dangerous Condition**

   1. *Regent Did Not Create a Dangerous Condition*

Klein is not required to prove that Regent was on notice of a dangerous condition if Regent created the foreseeable dangerous condition. *See Rockey v. Royal Caribbean Cruises, Ltd.*, No. 99-708, 2001 WL 420993, at *4 (S.D. Fla. Feb. 20, 2001) (Gold, J.). In *Rockey*, the court found that proof of notice was not required where the defendants created a situation where it was foreseeable someone could get hurt:

> [T]o require a plaintiff to also establish notice in a case where the defendant's own activities created a foreseeable and unreasonable risk of harm would be inappropriate. Such a requirement would have the absurd result that negligence actions could only be brought after a dangerous condition or practice created by a defendant claimed a previous victim, whose own recovery would be barred by the absence of notice.

*Id.* Klein argues that she does not need to prove that Regent was on notice of a dangerous condition because Regent created the dangerous condition. This Court disagrees.

In *Rockey*, Royal Caribbean knowingly placed a bingo board in a location and manner where it was foreseeable that somebody could get hurt. *Id.* at *2. Here, there is no evidence suggesting Regent took any action that created a dangerous condition. Regent installed the spot lights on the sides of the seats and the strip lighting on the nose of the steps. But, simply installing lights does not prove that Regent created the supposedly dangerous condition in this case—lack of illumination. To the contrary, addition of the strip lights was merely an

---

[2] Further, O'Neill recanted this testimony later in his deposition.

enhancement to the existing lighting that had proven adequate for 14 years. There is no indication that Regent caused the bulbs to burn out.

Even if a dangerous condition existed, it clearly was not created by Regent, as such a finding would imply that Regent took some action that increased the risk of lights being burnt out. The record simply contains no support for that argument. Accordingly, Klein is not relieved from the requirement to show that Regent had actual or constructive notice of the alleged dangerous condition.

### 2. *There is Insufficient Proof of Negligent Maintenance*

Klein is not required to prove that Regent was on notice if she can prove that Regent negligently maintained the steps. *See Mabrey v. Carnival Cruise Lines, Inc.*, 438 So.2d 937, 937 (Fla. Dist. Ct. App. 1983) ("actual or constructive knowledge is irrelevant...if ample evidence of negligent maintenance can be shown"). Klein argues that the evidence shows that some of the strip lights are not regularly changed after outages, and that Regent's tracker system failed to account for the strip lights. Indeed, of the more than 100 lighting issues entered in the tracking program in the five years leading up to Klein's incident, there were no reported issues with the track lighting. Yet, 18 months after the incident, photos of the stairs show that some of the strip lights are unlit. When O'Neill was asked about these photos, he confirmed that the photos accurately reflected the conditions on the day of the incident. Although Klein argues that this is an admission that some lights were out when Klein fell, when taken in context of the deposition, O'Neill testified only that the configuration of the lighting was the same, and that lights have not been added, removed, or modified. Further, even if the Court accepts O'Neill's statement as an admission that the lights were exactly as seen in the photo on the day of Klein's incident 18 months earlier, the strip lights on the step on which Klein tripped in the photo are fully

illuminated. Thus, even liberally construing the facts in Klein's favor, there is no indication of negligent maintenance in the record.

Klein also points to O'Neill's testimony as proof that strip light outages are not reported in the issue tracker system, which she argues constitutes negligent maintenance. But, photos from 18 months after the incident that show some strip light outages do not indicate that there were ever any strip light outages that were not entered into the tracker system in the five years preceding Klein's incident. And there is also no proof that the outages seen in the photos had not been reported since the record only includes tracker system data until February 2016—eight months before the photos Klein relies on. Klein's argument is merely too speculative. Accordingly, Klein is not relieved from the requirement to show that Regent had actual or constructive notice of the alleged dangerous condition. Thus, even assuming Klein could prove a dangerous condition existed, the Court still would grant Regent's motion for summary judgment.

## IV. CONCLUSION

Based on the foregoing, it is hereby

**ORDERED AND ADJUDGED** that Regent's Motion for Summary Judgment is **GRANTED**.

**DONE AND ORDERED** in Chambers at Miami, Florida, this ____ of August 2017.

```
                                    _____
                                    FEDERICO A. MORENO
                                    UNITED STATES DISTRICT JUDGE
```

Copies furnished to:

Counsel of Record